Filed 9/9/22

**<u>CERTIFIED FOR PUBLICATION</u>**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of DAWN BEAR KNOX and BLAIR BECKER KNOX. | |
| DAWN BEAR KNOX, | F081092 |
| Appellant, | (Super. Ct. No. BFL-18-001250 ) |
| v. | **OPINION** |
| BLAIR BECKER KNOX, | |
| Respondent. | |

APPEAL from a judgment of the Superior Court of Kern County.  Gloria J. Cannon, Judge.

Law Offices of Ira L. Stoker and Ira L. Stocker for Appellant.

Law Offices of Edward J. Thomas, Edward J. Thomas and Paul R. Domen for Respondent.

-ooOoo-

This appeal presents a question of law about pendente lite attorney fees under Family Code section 2030[1] that has not been addressed in a published opinion. The question is whether the family court violated the statute by not ruling on appellant Dawn Bear Knox's request for pendente lite attorney fees. As described below, a violation occurred because section 2030 requires a reasonably prompt ruling on a request for pendente lite attorney fees.

The failure to rule was prejudicial because self-represented Dawn bungled a key issue during the trial—namely, whether a residence acquired by respondent Blair Becker Knox when he was single was transmuted to community property when he executed a grant deed (1) transferring the residence from himself to "Blair B. Knox and Dawn Raquel Bear Knox, husband and wife as joint tenants" and (2) stating the transfer was a bona fide gift. Dawn attached a copy of the recorded deed to a supplemental trial brief, but she did not have it marked as an exhibit and did not offer it into evidence. This omission had dire consequences for Dawn because section 852, subdivision (a), states a transmutation cannot occur without a written, unambiguous expression of intent to transfer an interest in the property. Because the grant deed was not admitted into evidence, the family court found the separate property character of the residence was not altered even though Blair acknowledged the change in title during his testimony.

If Dawn had been represented by counsel, it is reasonably probable that the grant deed would have been offered and admitted into evidence and that she would have prevailed on the transmutation issue. Consequently, the question becomes whether a family court error was a cause of Dawn's lack of legal representation at trial. Section 2030 provides that family courts "*shall ensure* that each party has access to legal representation, *including access early in the proceedings*," by awarding pendente lite attorney fees when certain statutory conditions are met. (§ 2030, subd. (a)(1), italics

---

[1] Undesignated statutory references are to the Family Code.

2.

added.)  We interpret the phrase "shall ensure" to mean family courts have a mandatory obligation to order a party to pay attorney fees of the other party when the circumstances specified in the statute exist.  In addition, the reference to "access early in the proceedings" and other statutory text means family courts must not unreasonably delay their ruling on a request for pendente lite attorney fees.

Here, Dawn's request for pendente lite attorney fees was made early in the marriage dissolution proceedings and had been pending for over a year when the trial started.  By that time, Dawn was unemployed and representing herself.  Nonetheless, her request for pendente lite attorney fees was never ruled on by the family court.  Instead, the court waited until after the trial to address attorney fees in its final judgment of reserved issues.  At a minimum, the failure to hear and take the request under submission on the first day of trial constituted an unreasonable delay that violated section 2030.[2]  Furthermore, the erroneous failure to rule was not rendered harmless by any deficiencies in Dawn's request because a reasonably prompt denial would have given Dawn an opportunity to cure the defects.

Therefore, the judgment is reversed, and the matter remanded for further proceedings.

## FACTS

Dawn and Blair married in June 2005 and legally separated in October 2017.  The marriage lasted 12 years and four months.  There were no minor children.  The issues requiring litigation were almost entirely financial.

---

**2**    We note the violation denied Dawn meaningful access to justice as that concept is described in the final report and recommendations of the Elkins Family Law Task Force. (Judicial Council of California, Elkins Family Law Task Force, Final Report and Recommendations (Apr. 2010) <https://www.courts.ca.gov/elkins.htm> [as of Aug. 25, 2022] (Elkins Report).)

In October 2016, Blair started working as an executive officer for the Kern Local Agency Formation Commission. His gross monthly compensation was approximately $11,000. Before Dawn was laid off in May 2019, she was employed as an executive assistance by Optimal Healthcare Services, Inc. Her gross monthly income was approximately $6,000.

Most of the issues involving the division of the couple's assets and liabilities are not material to the procedural issue that resolves this appeal. However, issues related to the family residences are relevant to Dawn's showing of prejudice from the failure to rule on her request for pendente lite attorney fees. Consequently, we provide a brief history of those residences.

The parties' first home after their marriage was a house on Ottawa Court in Bakersfield. Blair had purchased it in September 1995 for $125,000 and had taken title in his name as a single person. The parties stipulated orally at trial "that on the date of marriage there w[ere] no encumbrances on the Ottawa house."[3] The parties disputed how the Ottawa Court residence came to be debt free. Dawn alleged that $40,000 from the sale of her condominium was used to pay off the mortgage on the residence. Blair denies such a payment occurred. When Blair was asked during trial if it was true that after the Ottawa Court residence was paid off, he had the grant deed changed into both of their names as husband and wife, Blair answered: "I don't remember how – who initiated changing it, but it was changed to joint names." Later, Blair's attorney offered to stipulate that all the real properties "were held in joint names." The grant deed, which was not admitted into evidence, is described later in this opinion.

In 2008, the Ottawa Court residence sold for $258,000. Around that time, the couple bought a house in Sacramento for $348,000 and $240,000 of the Ottawa Court

---

**3**    Dawn later attempted to set aside this stipulation, claiming she did not understand it. The dispute involving the stipulation is not material to the outcome of this appeal.

4.

sale proceeds was applied towards the purchase price. Approximately $108,000 of the purchase price was financed and subsequently paid off with $30,502 of community property and $77,913.83 from Blair's separate property—money he received from selling some corporate shares.

In February 2014, the couple purchased the third and final marital residence, a house on Monterey Beach Drive in Bakersfield, for $375,000. The couple paid a $5,000 deposit toward the purchase with community property funds, and the rest of the purchase price came from a bridge loan from Blair's mother. In May 2014, the Sacramento house was sold for $373,000 and the money deposited into a Morgan Stanley account. The couple repaid Blair's mother $380,000 for the bridge loan from the Morgan Stanley account. The characterization and value of the community property interest in the Monterey Beach Drive residence was an issue submitted to the court. The resolution of that issue required the court to address Dawn's contention that the Ottawa Court residence had been transmuted into community property.

## SUMMARY OF PROCEEDINGS

In January 2018, Dawn filed a petition for dissolution of marriage. She represented herself and filed a declaration stating that she had contracted with a registered legal document assistant to help prepare the petition and had paid $599 for the assistance. In April 2018, an attorney representing Blair filed Blair's response to the petition.

On May 7, 2018, Dawn's first attorney, Mellanie Marshall Rapozo, substituted in as counsel. On May 10, 2018, Rapozo filed Dawn's first request for order for temporary spousal support, for pendente lite attorney fees and costs, and for sale of the family residence. The hearing on the request for order was set for June 13, 2018. The hearing was continued many times. The continuances and related procedural history are described in part I.D. of this opinion.

5.

In August 2018, Attorney Robert F. Carbone replaced Rapozo as Dawn's attorney. In March 2019, Carbone substituted out of the case and Dawn began representing herself.

The trial was held on May 23, 2019, July 11, 2019, and July 22, 2019. In August 2019, the parties submitted written final arguments. In September 2019, the family court entered a judgment of dissolution, restoring the parties to the status of single persons and restoring Dawn's former name. Neither party appealed from the judgment of dissolution.

On November 4, 2019, the family court filed its ruling on the reserved issues. In April 2020, Dawn retained an attorney. On April 30, 2020, that attorney filed a substitution of attorney and a notice of appeal from the November 2019 ruling. This court informed Dawn that the ruling was not an appealable order or judgment. In February 2021, the family court filed a judgment on reserved issues. This appeal is treated as having been taken from that judgment.

The judgment awarded Blair the marital residence on Monterey Beach Drive and determined 88 percent of the value of the home ($359,920) was Blair's separate property and the remaining 12 percent of the value ($49,080) was community property. In reaching this conclusion, the family court addressed and rejected Dawn's theories for why the Ottawa Court residence was not entirely Blair's separate property. The first theory was Dawn's allegation that $40,000 from the sale of her condominium was used to pay off the loan against that residence. The second theory alleged Blair transferred the residence to the community when he changed title into both their names as joint tenants. The family court rejected Dawn's argument that Blair's changing the title of the Ottawa Court residence effected a transmutation by stating: "The characterization of the Ottawa Court property was not changed by changing the title, without a separate written instrument specifically transmuting the character of the property."

The judgment awarded Dawn 12 months of spousal support, which started on June 1, 2019, at $1,000 per month and was reduced to $500 per month on December 1, 2019. The judgment also addressed the subject of attorney fees and costs:

6.

"[Dawn] includes in her trial brief a request for attorney's fees and cost. At trial, [Dawn] did not put on any evidence regarding the fees. The court was not provided with declarations of the attorneys that represented [Dawn].

"The court is unable to complete an analysis under Family Code Section 2030, there is no testimony to determine if the amount requested is reasonable. Therefore, attorney's fees and cost will be denied without prejudice."

## DISCUSSION

I.      PENDENTE LITE ATTORNEY FEES AWARDS IN FAMILY LAW MATTERS

A.      Standards of Review

Before sections 2030, 2031 and 2032 were enacted in 1993 (Stats. 1993, ch. 219, § 106.1), our Supreme Court stated that "a motion for attorney fees and costs in a dissolution proceeding is left to the sound discretion of the trial court." (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768.) This principle appears in many decisions and secondary authorities. (E.g. *In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 296 [motion for attorney fees in dissolution action is addressed to the sound discretion of the court]; *Bruce v. Bruce* (1953) 121 Cal.App.2d 661, 664 [attorney fees during pendency of the dissolution action are "in the sound discretion of the trial court"].) For instance, a legal encyclopedia relies on *Sullivan* in asserting "[a]n award of attorney's fees and costs is not a matter of right, but rests in the sound discretion of the court." (33A Cal.Jur.3d (2021) Family Law, § 1336, p. 88, fns. omitted.)

The foregoing principles are no longer accurate statements of California law because the enactment of the 2004 and 2010 amendments to the attorney fees provisions in the Family Code (Stats. 2004, ch. 472, §§ 1–2; Stats. 2010, ch. 352, §§ 4–5) curtailed the broad discretion previously granted to family courts and created instances where fee awards are a matter of right. Thus, the statement about attorney fees being "left to the sound discretion of the trial court" (*In re Marriage of Sullivan*, *supra*, 37 Cal.3d at p. 768), which is reiterated in *Cueva*, *Bruce* and the legal encyclopedia, has been superseded by statute. (See *In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1049 ["it is no

7.

longer accurate to refer to a trial court's 'broad discretion' when describing a trial court's responsibilities under section 2030"] (*Morton*).)  As a result, family courts, commentators, and practitioners should be cautious in relying on statements about discretion set forth in pre-2011 case law, such as cases that identify abuse of discretion as the sole standard of review.  (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2022) ¶ 5:183.2, p. 5-122.)

Under the current version of the statutes, deciding whether to award pendente lite attorney fees and deciding the amount of any fees awarded require family courts to resolve questions of law, make findings of fact, and exercise discretionary authority to resolve certain issues.  Each of these aspects of the family court's decision is subject to a different standard of review.  Its findings of fact are reviewed under the deferential substantial evidence standard.  (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.)  Its resolution of a question of law is subject to de novo review.  (*Id.* at p. 712.)  Where the Legislature has committed a particular issue to the family's court discretion and the court must weigh various factors and choose from a range of options, that discretionary determination will not be disturbed if it falls within the range established by the applicable legal criteria.  (*County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 316; *Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1089 [abuse of discretion standard measures whether act of lower tribunal falls within permissible range of options set by the legal criteria].)

In this appeal, the main issues involve the interpretation of section 2030 and the application of that interpretation to the facts presented.  Issues of statutory interpretation are questions of law subject to de novo review on appeal.  (*County of Kern v. T.C.E.F., Inc.*, *supra*, 246 Cal.App.4th at p. 316.)

B.    Section 2030

Dawn's opening brief contends the trial court erred by failing to determine the amount of attorney fees and costs to be awarded.  Her brief refers to the many continuances of the hearing on her May 2018 request for order and quotes section 2030, which provides in part:

> "(a)(1) In a proceeding for dissolution of marriage ... and in any proceeding subsequent to entry of a related judgment, the court *shall ensure* that each party has access to legal representation, **including access early in the proceedings,** to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party ... to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding *during the pendency of the proceeding*."

> "(2) When a request for attorney's fees and costs is made, the court *shall* make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties.  If the findings demonstrate disparity in access and ability to pay, the court *shall* make an order awarding attorney's fees and costs.  A party who lacks the financial ability to hire an attorney may request, as an in pro per litigant, that the court order the other party, if that other party has the financial ability, to pay a reasonable amount to allow the unrepresented party to retain an attorney in a timely manner before proceedings in the matter go forward."  (§ 2030, subd. (a)(1), (2), italics added.)

The statutory text relevant to this appeal was added to section 2030 by the 2004 and 2010 amendments.[4]  First, the 2004 amendment changed the wording of section 2030, subdivision (a)(1) to "shall ensure."  (Stats. 2004, ch. 472, § 1.)  In comparison, the version adopted in 1993 used the words "the court may … ensure."  (Stats. 1993, ch. 219, § 106.1)  Second, the 2004 amendment added the phrase "during the pendency of the proceeding" to the end of subdivision (a)(1) of section 2030.  (Stats. 2004, ch. 472, § 1.)

---

[4]    Consequently, the changes implemented by the 1993 enactment of section 2030 and the history of its predecessors are not described here.  (See *In re Marriage of Hobdy* (2004) 123 Cal.App.4th 360, 368–369 [history of § 2030 and some of its predecessors].)

9.

Third, the 2004 amendment added paragraph (2) to subdivision (a) of section 2030, including the sentence that refers to payment of "a reasonable amount to allow the unrepresented party to retain an attorney *in a timely manner before proceedings in the matter go forward*." (Stats. 2004, ch. 472, § 1, italics added.) Fourth, the 2010 amendment's only change to subdivision (a)(1) of section 2030 was the insertion of the phrase "including access early in the proceedings," which is bolded in the indented quote above. (Stats. 2010, ch. 352, § 4.)[5]

Before interpreting the foregoing statutory text, we consider some of the legislative findings in the 2010 enactment, Assembly Bill No. 939 (2009-2010 Reg. Sess.). The Legislature referred to the rising number of self-represented litigants in family law cases and stated that "[a]ccess to justice requires that parties be able to appropriately address the court and present their cases." (Stats. 2010, ch. 352, § 1, subd. (b), p. 1818.) The Legislature also found that "[f]amily law cases involve an extraordinary range of issues, from the most simple, uncontested cases … to cases involving complex legal issues" and, "[u]nder the current system, the parties, who are most often self-represented, must take the initiative to obtain orders and judgments in a complicated judicial process that very few litigants can understand, and they often fail to take the next step toward completing the case." (Stats. 2010, ch. 352, § 1, subd. (c), p. 1818.) On the specific subject of awarding attorney fees early in the proceeding, the Legislature found and declared:

---

[5]     As to subdivision (a)(2) of section 2030, the 2010 amendment replaced its first sentence with a sentence that included the phrase "the court shall make findings" and with another sentence that included the phrase "the court shall make an order awarding attorney's fees" if the required findings demonstrated a disparity in access and an ability to pay. The part of our opinion in *Morton* addressing attorney fees discussed, among other things, the meaning and application of these phrases. (See *Morton*, *supra*, 27 Cal.App.5th at pp. 1048–1054 [Part IV., Attorney Fees].)

"Given the lifelong impact of family law matters, legal assistance in these cases is critical. Unfortunately, over 70 percent of litigants in family law cases are unrepresented by counsel. While many cases involve parties who are all unrepresented, in some of these cases one party can afford counsel but the other cannot. These cases pose significant difficulties for the unrepresented litigant, the attorney, and the judicial officer. Representation for parties can be significantly improved in some of these cases if courts make early need-based attorney's fee awards." (Stats. 2010, ch. 352, § 1, subd. (f), p. 1819.)

The 2010 amendments to section 2030 were made after the Legislature considered the recommendations of the Elkins Family Law Task Force. The task force was established by the Judicial Council of California at the suggestion of our Supreme Court (see *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1369, fn. 20) and published the Elkins Report in April 2010.

The Elkins Report organized its recommendations into five main topics. The topic of meaningful access to justice for all litigants was addressed in part by the following statement:

"Cases in which one side has counsel and the other does not can pose a variety of potential difficulties for the unrepresented litigant, the attorney, and the judicial officer. Representation may be available in more of these cases if courts were to make early needs-based attorney fee awards. [¶] … [¶] Far too many Californians are unable to afford counsel. The task force believes that we need to take steps to provide litigants with the appropriate levels of assistance they need to proceed with their cases." (Elkins Report, p. 59.)

Based on these and other factors, the Elkins Report made several recommendations about attorney fees, including the following:

"**Early needs-based fee awards**. Courts should give careful attention to making early needs-based attorney fee awards rather than deferring the issue to trial. This would *minimize the imbalance* in ability to hire counsel between litigants in a family law case. When a request for needs-based attorney fees is made, the court should make findings regarding whether the award of fees is necessary, whether there is a disparity in access to funds or income, and whether one party is able to pay. If the findings demonstrate

11.

need, disparity in access, and ability to pay, the court should make an order awarding attorney fees." (Elkins Report, p. 60, italics added.)

This recommendation appears to be the basis for the Legislature's decision to add the phrase "including early in the proceedings" to section 2030, subdivision (a)(1).

C.     Interpreting the Statutory Text

With the legislative findings and Elkins Report's recommendations in mind, we address the meaning of the relevant text of section 2030, subdivision (a)(1), which states that "the court shall ensure that each party has access to legal representation, including access early in the proceedings, to preserve each party's rights by ordering, … one party … to pay the other party, … whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." (§ 2030, subd. (a)(1).)

1.     *Family Court's Mandatory Obligation*

When used in the Family Code, " '[s]hall' is mandatory and 'may' is permissive." (§ 12.) Thus, in *Morton*, *supra*, 27 Cal.App.5th 1025, we concluded section 2030 used "shall" to indicate particular provisions were mandatory. (*Morton*, *supra*, at p. 1050.) Similarly, we conclude the phrase "shall ensure" imposes a mandatory obligation or duty on family courts. (See Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2022) ¶ 1:37, p. 1-11 [family court's mandatory obligation to ensure parties have equal access to legal representation].) As described below, fulfilling the obligation to ensure access to legal representation involves specific procedural steps.

2.     *The Obligation Arises When a Request is Made*

The language in subdivision (a)(1) of section 2030 does not expressly identify the event that gives rise to the family court's mandatory obligation to address the issue of pendente lite attorney fees. Construing section 2030 as a whole, we conclude the relevant statutory text is contained in subdivision (a)(2) of section 2030, which begins: "When a

request for attorney's fees and costs is made, the court shall make findings on ...."[6] We conclude the phrase "[w]hen a request for attorney's fees and costs is made" identifies the making of a request for attorney fees as the event that triggers the family court's obligation to address the issue of pendente lite attorney fees. We adopt this interpretation because we have located nothing in the legislative findings, the Elkins Report, or secondary authorities suggesting section 2030 imposes a sua sponte duty on family courts to address a party's need for pendente lite attorney fees in cases where no request has been filed or, alternatively, excuses family courts from considering and deciding such requests.

### 3. *How Pendente Lite Requests Are Made*

Before addressing when a family court must address and resolve a request for pendente lite attorney fees, we consider how the request "is made" for purposes of subdivision (a)(2) of section 2030. The subject is addressed in section 2031 and California Rules of Court, rule 5.427. (Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶¶ 5:192–5:192.1, p. 5-132.) Section 2031 provides:

> "(a)(1) Except as provided in subdivision (b), during the pendency of a proceeding for dissolution of marriage, for nullity of marriage, for legal separation of the parties, or any proceeding subsequent to entry of a related judgment, *an application for a temporary order making*, augmenting, or modifying *an award of attorney's fees*, including a reasonable retainer to hire an attorney, or costs or both *shall be made by motion on notice or by an order to show cause*.

> "(2) The court shall rule on an application within 15 days of the hearing on the motion or order to show cause.

> "(b) An order described in subdivision (a) may be made without notice by an oral motion in open court at either of the following times:

---

**6** In *Morton*, *supra*, 27 Cal.App.5th 1025, we concluded the phrase "the court shall make findings" as requiring family courts to make express findings, either in writing or orally on the record. (*Id*. at p. 1050.)

"(1) At the time of the hearing of the cause on the merits.

"(2) At any time before entry of judgment against a party whose default has been entered pursuant to Section 585 or 586 of the Code of Civil Procedure. The court shall rule on any motion made pursuant to this subdivision within 15 days and prior to the entry of any judgment."  (Italics added.)

These provisions allow a party to a marriage dissolution proceeding to make a *written* request for pendente lite attorney fees by a noticed motion or an order to show cause.  The contents of written requests are addressed in California Rules of Court, rule 5.427(b), which states that a party must complete, file and serve a request for order (Judicial Council form FL-300), a request for attorney's fees and costs attachment (Judicial Council form FL-319), a current income and expense declaration (Judicial Council form FL-150), and a supporting declaration for attorney's fees and costs attachment (Judicial Council form FL-158) or comparable declaration.

### 4.      When Must a Pendente Lite Request Be Heard and Resolved?

Next, we consider a general question of timing:  Once a request for pendente lite attorney fees has been served and filed, how long may a family court wait before hearing and resolving the request?  The relevant text in subdivision (a)(1) of section 2030 are the phrases "including access early in the proceeding" and "maintaining or defending the proceeding during the pendency of the proceeding."  (§ 2030, subd. (a)(1).)  Those phrases unambiguously require the family court to hear and resolve the request during the course of the proceeding.  In other words, a family court that does not resolve a request for pendente lite attorney fees until after trial has not ensured a self-represented party's access to legal representation "during the pendency of the proceeding," much less "early in the proceedings."  (§ 2030, subd. (a)(1).)[7]  This interpretation also is consistent with the legislative intent expressed in the last sentence of subdivision (a)(2) of section 2030,

---

[7]      As a practical matter, waiting until after trial to rule on attorney fees effectively denies the request for pendente lite attorney fees.  If the subject of attorney fees is addressed in the final judgment, the delay deprived the request of it pendente lite quality.

14.

which refers to an order for the payment of "a reasonable amount to allow the unrepresented party to retain an attorney in a timely manner before proceedings in the matter go forward." (§ 2030, subd. (a)(2).)

More specific questions of timing are (1) how quickly a family court must hear a request for pendente lite attorney fees after it is made and (2) how quickly a family court must decide the request after it is heard. The latter question is expressly addressed by subdivision (a)(2) of section 2031, which states that the family court "shall rule" on the request within 15 days of the hearing. Thus, the statute establishes a mandatory deadline *for ruling* after the request is heard and the matter submitted.

In comparison, the Family Code does not expressly impose a deadline *for hearing* a request for pendente lite attorney fees or a limit on the number or length of continuances. Despite the lack of an explicit statutory provision, it is reasonable to infer from the legislative findings, the Elkins Report, and the statutory text that the obligation to ensure access early and throughout the proceeding includes an obligation to hear the request for pendente lite attorney fees with reasonable promptness. The impact of a reasonably prompt hearing and order *awarding* attorney fees and costs on a party's access to legal representation is self-evident. The impact of a reasonably prompt hearing and order *denying* a request for pendente lite attorney fees, if based on deficiencies in the request, is that the litigant will be informed of the deficiencies and will have an opportunity to cure the defects.

Accordingly, we interpret the Family Code attorney fees provisions as requiring the family court to hold the hearing on a request for pendente lite attorney fees with reasonable promptness. As a practical matter, this interpretation acts as a limitation on a family court's discretionary authority to grant continuances. The contrary interpretation—one allowing an unreasonable delay—would hinder, rather than promote, the legislative purpose of section 2030. (See *Cavey v. Tualla* (2021) 69 Cal.App.5th 310, 337 [court's goal is to adopt the interpretation that best effectuates the Legislature's

15.

purpose].) "The purpose of section 2030 is to ensure parity. 'The idea is that both sides should have the opportunity to retain counsel, not just (as is usually the case) only the party with greater financial strength.' " (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1056.) In addition, the Legislature intends that opportunity to be provided "early in the proceedings" when a request for pendente lite attorney fees has been "made." (§ 2030, subd. (a)(1), (2).)

### D. Relevant Procedural History

#### 1. Dawn's First Request for Order

When Dawn filed the petition for dissolution of marriage in January 2018, she was not represented by an attorney. Blair hired an attorney and filed his response to the petition in April 2018. Concerned about her lack of understanding and an unlevel playing field, Dawn retained an attorney. On May 10, 2018, her attorney filed a request for order for spousal support, attorney fees and costs, and sale of family residence. The request for order was made using Judicial Council form FL-300. Dawn requested $7,500 in fees and actual costs, using optional Judicial Council form FL-319. She checked the box for item 3.c., indicating the requested amount includes "estimated attorney's fees and costs in the amount of: $7,500." Dawn's attached declaration asserted she retained counsel to assist her because she had "no understanding of the legal process and no legal training." The declaration also stated Dawn provided an initial retainer of $7,500 and had a balance of $5,500. The retainer was paid from Dawn's savings.

Dawn's request also included an income and expense declaration stating she had $21,000 in her checking and savings accounts, a monthly income of $6,178, monthly expenses of $3,130, and no credit card or other debt. She estimated Blair's gross monthly income at $10,400. Blair's responsive declaration stated he had the ability to pay spousal support and stated his gross income from employment was $10,996 per month and his current income from investments and other sources was $6,432 per month.

16.

## 2.	*Continuances and Change of Attorneys*

The hearing on Dawn's request for order initially was set for June 13, 2018. Dawn, through her first attorney, stipulated to a continuance to July 2, 2018, and another to August 20, 2018. The first continuance was due to the unavailability of Blair's counsel. The second continuance was because Blair's responsive declaration to Dawn's request for order was filed late (i.e., on June 29, 2018) and Dawn's attorney needed more time to review the response.

On August 9, 2018, Dawn's second attorney substituted into the case, replacing her first attorney. At the August 20, 2018, hearing, the family court granted a third continuance. The minute order stated the reason was "Further discovery." Dawn asserts the request for further discovery was made by Blair.

In September 2018, the parties stipulated to a fourth continuance because of pending settlement discussions. The rescheduled hearing date was in November 2018.

At the November 2018 hearing on the request for order, the family court did not rule on the request. Instead, the court set the matter for court trial on April 11, 2019, and directed the parties to serve and file trial briefs, witness lists, and exhibit lists by February 4, 2019. The court also set a mandatory settlement conference for February 21, 2019. The effect of these orders on Dawn's request for temporary spousal support and pendente lite attorney fees could be described as a fifth continuance. Alternatively, the practical impact on the request for pendente lite attorney fees was a denial of such fees because any award of fees after the trial started would not be "pendente lite" if that term is interpreted to mean any time *before* the hearing on the cause on the merits. (See Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶ 5:195, p. 5-135; *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 637 [pendente lite orders also are referred to an interim or temporary orders].)

17.

On January 24, 2019, the court vacated the trial date and reset it for May 23, 2019, due to the unavailability of counsel, which Dawn asserts was the unavailability of Blair's counsel.

On March 4, 2019, the parties and their attorneys attended a mandatory settlement conference. The conference was continued to March 21, 2019, with the family court ordering Dawn to file a mandatory settlement conference statement before that date. On March 14, 2019, Carbone filed a substitution of attorney on mandatory Judicial Council form MC-050 in which Dawn consented to substituting herself in place of Carbone. The form does not require a statement of the reason for the substitution and no reason was provided.[8]

As a result of the substitution, Dawn represented herself at the March 21, 2019, mandatory settlement conference. The court confirmed the trial date of May 23, 2019, directed Dawn to comply with Blair's discovery requests, and directed the parties to exchange final declarations of disclosure and file proof by April 8, 2019.

### 3. Dawn's Second Request for Order

On May 21, 2019, two days before trial, Dawn filed a request for order for temporary spousal support. The hearing on Dawn's second request for order was set for June 26, 2019—a month after the scheduled start of trial.

In the request, Dawn asserted Blair made substantially more than she did; the marriage was long-term and she could not sustain the lifestyle enjoyed during the marriage without financial support; and she had been laid off on May 13, 2019, and was in dire need of financial assistance. Dawn's declaration stated her employer terminated her position with the company and would provide five weeks of severance pay. Her income and expense declaration stated she earned $5,538 the month before and had

---

[8] However, we infer her second attorney withdrew from the case because of Dawn's inability to afford his services. After the withdrawal, Dawn informed the court, both orally and in writing, that she could no longer afford an attorney.

18.

monthly expenses totaling $3,276. She listed $20,936 in cash in checking and savings accountants and $59 in credit card debt. In item 15 of the declaration, Dawn stated she had paid $15,585 to her two attorneys from her checking and savings accounts and still owed $5,298 in attorney fees ($2,838 to Rapozo and $2,460 to Carbone). In item 20 of the declaration, Dawn stated that she could no longer afford an attorney and that she had obtained assistance from a typing service. She stated she had spent a total of $3,010 on fees for such services, which also included filing fees.[9] Thus, during the 16 months that had elapsed from the filing of the petition of dissolution until the filing of her second request for temporary spousal support, Dawn asserted she had incurred almost $24,000 in attorney fees and other costs.

### 4. The First Day of Trial

On the afternoon of May 23, 2019, the trial started. Dawn represented herself and Blair was represented by counsel. The proceeding began with a discussion of the parties' pretrial meeting, the schedule for filing trial briefs, and the family court's statement to Dawn that when it makes a briefing order and sets a trial date, each party should comply with the order regardless of whether the other party complies. Dawn referred to the many continuances, the fact she had an attorney at the time the court set the deadline for exchanging trial briefs, and the fact that "I've gone through two attorneys now." Dawn stated, "That's why I'm now representing myself. I can no longer afford it."

The court then said, "What is the RFO -- and I could have looked in the file for that as well -- that's set for June 26th?" This is a reference to the Dawn's second request for order, which requested only temporary spousal support and had been filed by her two

---

[9]    The name, address and registration number of the legal document assistant used by Dawn was stamped onto the first page of the Judicial Council form FL-300, request for order, which supports Dawn's contention that fees were incurred.

days earlier.[10]  Dawn stated:  "That is what I set because I'm no longer employed.  I was just laid off on May 13th, and I now have no income."  The court then stated that the request had not made it into the file when the court reviewed the file the prior day.  Counsel for Blair asserted the request "will become irrelevant as a result of this trial."  The discussion turned to the division of assets and the extent of the parties' agreement about those assets.  The court determined that there was an agreement and stated that "we need to focus on the things where the court is going to need to make a decision."

Counsel for Blair then raised the issue of marital status, the court heard Blair testify to irreconcilable differences, and his counsel submitted the issue.  The court granted the request for dissolution of marriage, restored the parties to the status of unmarried persons, and restored Dawn to her prior name as requested.

The proceeding then turned to taking testimony about the parties' assets and liabilities.  The first witness to testify was Ken Swartzberg, a forensic certified public accountant hired by Blair to determine the character of the Monterey Beach Drive house, and to trace the character of funds in a particular bank account.  Swartzberg had prepared a report that was admitted into evidence as respondent's exhibit "G" without objection.  That report is not part of the record on appeal.

During Dawn's cross-examination of Swartzberg, she referred to his report and the information about the Ottawa Court residence, stating Swartzberg did not indicate how Blair paid off his loan on the residence.  The court asked, "Was it paid off at the time the parties were married?  I thought that was the stipulation."  Blair's counsel replies, "That

---

**10**  The contents of the reporter's transcript show the court did not realize that Dawn's first request for order, which sought temporary spousal support, pendente lite attorney fees, and the sale of the family residence, had been pending for over one year without being considered and decided.  The court's failure to realize there had been a request for order in May 2018 is confirmed by the erroneous description in the judgment on reserved issues of the time that passed between separation and Dawn's request for temporary spousal support.  (See fn. 11, *post*.)

was the stipulation." The court stated that "if there was no mortgage at the time the parties were married, it's not relevant as to how he paid it off." Dawn disagreed, stating: "No, there was a mortgage when we got married because I paid it off." In the exchange that followed about the stipulation and its meaning, Dawn stated she did not understand what the words in the stipulation meant. The court asked: "What do you believe was the amount of mortgage at the time you got married?" Dawn replied:

> "I paid it off with $40,000 after we got married, and I have a grant deed where [Blair] changed it into our name, and it's Blair Knox and Dawn Raquel Bear Knox, husband and wife as joint tenants, the Ottawa home. And it's attached to my trial brief that you have, and they just seem to be leaving that out."

The court then stated that Swartzberg was not going to be able to answer questions about documents he had not seen. Dawn stated: "Yeah. Okay. Well, those are all my questions." Blair's counsel then conducted a short redirect examination of Swartzberg.

After the family court released Swartzberg, who had been allowed to testify out of order, the proceedings returned to the presentation of Dawn's case. The court stated they would stop at 4:25 p.m. and pick the next date. Dawn then called Blair as a witness. Blair's counsel objected to Dawn's first three questions and the court allowed a portion of the third question, stating: "[Dawn] asked how much had you paid the loan down to on the Ottawa home prior to marriage?" Blair responded, "I don't know." After asking questions about a bank account, Dawn asked Blair if it was true that she "paid off your home loan of $40,000 shortly after we were married?" Blair replied, "I don't remember."

Later, Dawn turned to the subject of the grant deed and asked Blair: "[I]s it true that after the Ottawa home was paid off, you had the grant deed changed into both of our names as husband and wife." Blair answered: "I don't remember how -- who initiated changing it, but it was changed to joint names." Dawn's following questions addressed vehicles, gifts, and other subjects, including their residence in Sacramento and whether it was held in both their "names as husband and wife joint tenants." Blair's counsel

21.

interjected, stating "I don't think it has any legal significance under current law, but we will stipulate the properties were held in joint names."

When Dawn asked Blair about investing approximately $45,000 in his 1972 Blazer, Blair's counsel stated the question of vague as to time and the type of expenditure. The court stated that it would require Dawn "to break that down, but we'll start at that point when we come back because it's now 4:30." After discussing issues about the stipulations, requests for admission and other matters, the court set July 11 and 12, 2019, as the second and third day of trial. Dawn asked whether her request for spousal support would be heard on June 26, 2019, and the court stated it would remain on calendar, "although we'll see where we are."[11]

### 5. June 26, 2019, Hearing: Temporary Spousal Support

At the June 26, 2019 hearing, Dawn explained that she made the second request for temporary spousal support because Blair and his attorney had continued her first request for order (which was filed on May 10, 2018) multiple times and support was more of an emergency now because she had been laid off on May 13, 2019. Dawn also stated she had filed for unemployment and was receiving $450 a week. Dawn asked that the court use the DissoMaster calculator to determine what she was due in spousal support and make an order that day.

Blair's counsel argued there was no reason for an emergency hearing because Dawn had received five weeks of severance pay, was receiving unemployment benefits, and her income and expense declaration stated she had $20,936 in the bank. Counsel

---

**11** The details about the proceedings on the first day of trial are provided because the November 2019 ruling and the February 2021 judgment on reserved issues do not accurately described what occurred. That erroneous description states: "On May 23, 2019, after the testimony began, there was a request to continue the trial to allow [Dawn] to retain an expert. The court took into consideration, [Dawn] was pro per and that she had short notice of [Blair's] expert. Over [Blair's] objection the matter was continued to July 11, 2019 and July 12, 2019. [Dawn] was ordered to provide her expert's name and report five days before the hearing."

22.

argued the better course was to deal with the issue as permanent support and use the hearing time to finish Blair's testimony.

The family court then summarized the evidence, described the difference between temporary support to maintain the status quo pending trial and permanent support based on the factors in section 4320, and stated: "But given that we're going to hearing in approximately two weeks and that you have over 20,000 in savings, any order that I would make right now is going to change in two weeks. It doesn't make sense to go through the factors today when you have 20,000 in savings and you're not going … to be evicted." The court also stated it would determine whether support was appropriate at the conclusion of the trial and would see the parties on July 11, 2019. The fact that the trial had begun without the May 2018 request for pendente lite attorney fees being resolved was not mentioned during the hearing by the parties or the court.

6.      *Second Day of Trial*

On July 11, 2019, when the trial resumed, Dawn first addressed the family court by stating: "I would like to address spousal support since I haven't received a dime from [Blair] in over a year and a half. [¶] I would like to address our home that is paid for and he has been living in rent free for a year and a half. [¶] I would like to address attorney fees and costs."[12] Dawn again stated she had been laid off on May 13, 2019, and acknowledged that she received five week's severance pay, which was $4,450. Dawn asserted that, more than ever, she needed "assistance with spousal support now, and I would appreciate if you could come to a judgment on that today." At the end of the second day of trial, the court stated: "I'm not saying I won't make an ultimate

---

**12**      This statement about addressing attorney fees and costs was made "[a]t the time of the hearing of the cause on the merits" as that phrase is used in section 2031, subdivision (b)(1). Because the judgment is reversed on other grounds, we need not reach the issue of whether the statement constitutes "an oral motion in open court" for purposes of section 2031, subdivision (b) or the issue of whether the court's failure to rule on the request for temporary spousal support was error.

23.

determination whether or not you're entitled to spousal support. [¶] What I'm saying is I don't see thing urgency when I have to do the [section] 4320 factors." At that time, the court did not rule on Dawn's pending requests for temporary spousal support or the May 2018 request for pendente lite attorney fees. The court rescheduled the third day of trial, setting it for July 22, 2019, at 1:30 p.m., after Dawn confirmed by telephone that her expert on issues addressed by Swartzberg was available at that time.

Ultimately, the family court did not rule on the issue of attorney fees and costs until after the trial, when it issued the November 4, 2019 ruling on the reserved issues. The attorney representing Dawn on appeal did not substitute into the case until April 30, 2020—the date he filed her notice of appeal.

E.     Application of Statutory Interpretation to the Facts

Dawn's opening brief contends the family court "refused to consider the issue of attorney fees and costs despite her Court filings and her repeated attempts to have the issue addressed during the [t]rial proceedings." Dawn asserts this refusal was an abuse of discretion. Her opening brief also lists the times her request for attorney fees was continued and asserts none were her fault. Viewing these contentions in context, we interpret its use of the phrase "refused to consider" to mean "failed to address and decide" Dawn's request for pendente lite attorney fees. Thus, the initial question about attorney fees framed by Dawn's opening brief is whether the family court erred by never ruling on Dawn's request for pendente lite attorney fees and, instead, waiting until after the trial to address attorney fees.

Blair's respondent's brief does not address the issues involving the failure to rule on Dawn's request for pendente lite attorney fees. Instead, he skips those issues and argues Dawn was not entitled to attorney fees because (1) her request and related documentation did not comply with California Rules of Court, rule 5.427(b)(2); (2) Dawn presented no evidence regarding attorney fees during the trial; and (3) the family court

24.

correctly referred to the absence of evidence in denying the request for attorney fees and costs.

The procedural history described earlier shows that Dawn's request for pendente lite attorney fees had been pending for over a year when the trial began in May 2019 and that Dawn had represented herself for over two months. At the start of trial, Dawn informed the family court that she was self-represented because she could not afford an attorney. The trial ended in July 2019, and the court did not rule on the attorney fees issue until November 2019.

First, we conclude that Dawn "made" a request for pendente lite attorney fees for purposes of section 2030, subdivision (a)(2) on May 10, 2018, when her first attorney filed a request for order for temporary spousal support, for pendente lite attorney fees and costs, and for sale of the family residence. The May 10, 2018 request for order triggered the family court's mandatory obligation to address the issue of pendente lite attorney fees. (See pts. I.C.1. & I.C.2., *ante*.)

Second, we conclude the family court violated this mandatory obligation by failing to address the issue of attorney fees until after the trial had ended. At a minimum, the court should have heard Dawn's request on May 23, 2019, when Dawn informed the court that she could not afford an attorney.[13] If the request had been heard and submitted on that date, the 15-day period for a ruling would have expired more than a month before the second day of trial. (See § 2031, subds. (a)(2), (b)(1).) In short, the court violated its statutory obligation when it failed to address and decide Dawn's request for pendente lite attorney fees with reasonable promptness. Based on this specific violation, we conclude the court failed to fulfill its statutory duty to ensure Dawn's access to legal representation during the course of the proceedings. (§ 2030, subd. (a)(1).)

---

[13]     Based on this conclusion and our later conclusion that the violation was prejudicial (see pt. II., *post*), we need not identify the specific date when the court first violated the obligation to hear and resolve such a request with reasonable promptness.

II.     PREJUDICE

Having identified a procedural error, the next question is whether that error was prejudicial.  (See Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)  We first consider the arguments presented in Blair's respondent's brief.

A.     Deficiencies in the Request

Blair contends that Dawn's request did not comply with the requirements of California Rules of Court, rule 5.427(b)(2), which states:

> "The party requesting attorney's fees and costs must provide the court with sufficient information about the attorney's hourly billing rate; the nature of the litigation; the attorney's experience in the particular type of work demanded; the fees and costs incurred or anticipated; and why the requested fees and costs are just, necessary, and reasonable."

Blair argues the request was defective because it did not explain (1) how or why any of the claimed fees were incurred or (2) why Dawn had not paid the outstanding attorney fees out of her $21,000 in savings or the $3,000 per month she earned in excess of her expenses.  These arguments do not directly address the family court's failure to address and decide the request for pendente lite attorney fees with reasonable promptness or whether that particular failure caused prejudice.

We conclude that if the family court had not unreasonably delayed ruling on Dawn's request and, at a minimum, had issued an order denying the request on or before June 7, 2019 (i.e., within 15 days of May 23, 2019), Dawn would have had an opportunity to cure any defects by filing a new request that could have been heard before the trial resumed in July 2019.  Stated another way, any deficiencies in Dawn's request did not eliminate the court's obligation to provide a reasonably prompt ruling or cause the court's unreasonable delay to be harmless.

B.     Dawn's Ability to Pay

Blair's arguments also suggest Dawn was not prejudiced by the delay because her savings were sufficient to enable her to retain counsel.  To the extent this argument is

implied from Blair's brief, it must be rejected as contrary to statute and case law. Section 2032, subdivision (b) provides in part: "The fact that the party requesting an award of attorney's fees and costs has resources from which the party could pay the party's own attorney's fees and costs is not itself a bar to an order that the other party pay part or all of the fees and costs requested." In *In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, the court concluded one spouse's significant asset base from which to draw fees did not bar a need-based fee award, stating: "By mandatory consideration of the parties' relative circumstances, section 2032 authorizes a need-based fee award even if [wife] could pay her own attorneys' fees." (*Id*. at p. 111.) Thus, under the statute and existing case law, the failure to consider and decide the request for pendente lite attorney fees cannot be regarded as harmless error on the ground Dawn's savings could have covered the cost of an attorney to represent her at trial. In short, the existence of the savings does not preclude Dawn from affirmatively demonstrating prejudice.

### C. Dawn's Failure to Get the Grant Deed Admitted into Evidence

As an appellant, Dawn has the burden of affirmatively demonstrating the family court's error was prejudicial. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [appellant must affirmatively demonstrate both error and prejudice].) The test for prejudice is whether there is a reasonable probability that in the absence of the error, a result more favorable to the appellant would have been reached. (*Morton*, *supra*, 27 Cal.App.5th at p. 1051.)

As described below, the basis for concluding Dawn was prejudiced by the failure to ensure her access to legal representation is Dawn's failure, as a self-represented litigant, to have the grant deed for the Ottawa Court residence admitted into evidence.

Dawn attached a copy of the grant deed as an exhibit to her supplemental trial brief filed with the family court on July 11, 2019, the second day of trial. The deed was signed by Blair on December 5, 2006, and was recorded by the Kern County Assessor-

Recorder on December 12, 2006. The deed stated that Blair, a married man who acquired title as a single man, granted the Ottawa Court residence to "Blair B. Knox and Dawn Raquel Bear Knox, husband and wife as joint tenants." The deed also stated: "This is a bonafide gift and the grantor received nothing in return, R & T 11911."

During the first day of trial, Dawn referred to the grant deed for the Ottawa Court residence and asked Blair if he "had the grant deed changed into both of our names as husband and wife." Blair acknowledged "it was changed to joint names." On the last day of trial, Dawn again referred to the grant deed, stating: "I've already pointed out that the grant deed is in both our names. I've already pointed out that I paid certain things. I've tried to bring things in to evidence." The grant deed, however, was not marked as a trial exhibit and was not offered into evidence by Dawn. It is obvious from the record that Dawn did not understand the rules of evidence or trial procedure. She referred to many documents and, in her view, "tried to bring things in to evidence," but she did not actually offer any documents into evidence.

If Dawn had been represented by counsel during the last two days of the trial, it is reasonably probable that the grant deed would have been offered into evidence and admitted. Alternatively, if Dawn had received an ethically permissible explanation from the family court of its procedures and rules of evidence,[14] it is reasonably probable that

---

**14** Canon 3(B)(8) of the California Code of Judicial Ethics provides: "A judge shall dispose of all judicial matters fairly, promptly, and efficiently. A judge shall manage the courtroom in a manner that *provides all litigants the opportunity to have their matters fairly adjudicated in accordance with the law*." (Italics added.) The advisory comment recognizes that promptness and efficiency sometimes conflicts with fairness: "The obligation of a judge to dispose of matters promptly and efficiently must not take precedence over the judge's obligation to dispose of the matters fairly and with patience. For example, when a *litigant is self-represented*, a judge has the *discretion* to take reasonable steps, appropriate under the circumstances and consistent with the law and the canons, to enable the litigant to be heard." (Cal. Code Jud. Ethics, Advisory Com. com. foll. cannon 3(B)(8), *italics added*.)

she would have gotten the grant deed for the Ottawa Court residence admitted into evidence. As described below, in either scenario where the grant deed is admitted, it is reasonably probable that Dawn would have prevailed on her transmutation argument regarding the residence.

In *Estate of Bibb* (2001) 87 Cal.App.4th 461, a husband died intestate and a dispute over real property arose between his widow and his son from his first marriage. (*Id.* at p. 465.) The real property had been purchased during the first marriage. (*Id.* at p. 464.) After husband's first wife died, he remarried and signed a grant deed conveying the property from himself to himself and " 'his wife as joint tenants.' " (*Id.* at pp. 464–465, 468, fn. 3.) In the probate proceeding, the son filed a petition to establish that the estate owned the real property, contending it had not been validly transmuted from husband's separate property under section 852, subdivision (a). (*Estate of Bibb*, *supra*, at p. 465.) In applying that statute, the court was guided by principles set forth in *Estate of MacDonald* (1990) 51 Cal.3d 262, in which the Supreme Court concluded section 852,

---

A handbook on judicial conduct describes ethically permissible conduct towards self-represented litigants and identifies areas where accommodation is proper. (Rothman, et al., California Judicial Conduct Handbook (4th ed. 2017) § 2:28, p. 99.) For instance, it is ethically permissible for judges to "explain court procedures, inform a party of the process for securing witnesses, and even inform a party of missing elements of proof or other legal requirements, so long as the court remains impartial and provides such guidance to all parties, whether or not they are represented. A court needs to be very careful, however, when engaging in such activities to avoid becoming an advocate and stepping out of the judicial role." (*Id.* at pp. 99-100.) Also, a court "may direct any litigant to resources that are publicly available or that are provided by the judicial system to assist self-represented persons in … explaining court procedures and rules, subpoenaing witnesses, preparing documents for filing in court, and so forth." (*Id.* at p. 99.) Another secondary authority states: "Most judges explain to self-represented litigants basis procedural matters, such as the sequence for the presentation of evidence and offer to answer any questions that the litigants may have about the trial proceeding." (Cal. Judges Benchbook: Civil Proceedings—Trial (CJER 2022) § 2.19, p. 65.) Under these principles, it was ethically permissible for the family court to explain to Dawn the procedures for the admission of a document into evidence. (See California Judges Association Committee on Judicial Ethics (Dec. 2018) Opinion No. 76.)

29.

subdivision (a) was intended "to create a writing requirement which enables courts to validate transmutations without resort to extrinsic evidence and, thus, without encouraging perjury and the proliferation of litigation." (*Estate of MacDonald*, *supra*, at p. 272.) The court concluded the grant deed, which stated husband "grant(s)" the subject property to himself and his wife as joint tenants satisfied the statute's express declaration requirement because the deed contained on its face a clear and unambiguous expression of intent to transfer the real property interest and, as a result, the subject property was transmuted into property held in joint tenancy. (*Estate of Bibb*, *supra*, at p. 464.) In particular, the court concluded that the word "grant" is the historically operative word for transferring interests in real property. (*Id.* at pp. 468–469.)

In this case, the grant deed also used the word "GRANT(S)." Furthermore, it stated the transfer was "a bonafide gift." Because the deed was not admitted into evidence, the family court did not address its significance. Instead, in an apparent reference to Blair's testimony that the title to the Ottawa Court residence had been changed, the court stated: "The characterization of the Ottawa Court property was not changed by changing the title, without a separate written instrument specifically transmuting the character of the property." Here, the grant deed is just such a written instrument. Thus, based on section 852, subdivision (a) and the case law principles precluding the resort to extrinsic evidence to interpret the written instrument, it is highly probable Dawn would have prevailed on the transmutation issue if the grant deed had been admitted into evidence.

Consequently, Dawn has demonstrated the family court's failures to comply with its obligations under section 2030 were prejudicial. To remedy this prejudicial error, we must reverse the judgment (which places all reserved issues at large) and remand the case for further proceedings. Those proceedings shall include a hearing on Dawn's request for pendente lite attorney fees and a decision on that request before the new trial is started. Because over four years have passed since Dawn filed her May 2018 request for order

awarding pendente lite attorney fees and costs, the court shall allow Dawn to file a new request for order and shall allow Blair to file a response before hearing the request for pendente lite attorney fees and costs.

## DISPOSITION

The judgment on reserved issues is reversed and the matter is remanded for further proceedings not inconsistent with the opinion. Dawn shall recover her costs on appeal.

FRANSON, J.

**WE CONCUR:**

POOCHIGIAN, ACTING P. J.

SNAUFFER, J.

31.